1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    AMY DANIELLE COLBERT,                    Case No.  1:22-cv-01385-TLN-HBK

12                   Plaintiff,                FINDINGS AND RECOMMENDATIONS TO
                                               DENY PLAINTIFF'S MOTION FOR
13           v.                                SUMMARY JUDGMENT, GRANT
                                               DEFENDANT'S CROSS-MOTION FOR
14    MARTIN O'MALLEY,                         SUMMARY JUDGMENT, AND AFFIRM
      COMMISSIONER OF SOCIAL                   THE DECISION OF THE COMMISSIONER
15    SECURITY,[1]                             OF SOCIAL SECURITY[2]

16                   Defendant.                (Doc. Nos.  16, 19)

17                                             FOURTEEN-DAY OBJECTION DEADLINE

18

19           Amy Danielle Colbert ("Plaintiff") seeks judicial review of a final decision of the

20    Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21    supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is

22    currently before the undersigned on the parties' briefs, which were submitted without oral

23    argument.  (Doc. Nos. 16, 19-20).  For the reasons stated, the undersigned RECOMMENDS

24    denying Plaintiff's motion for summary judgment, granting the Commissioner's cross-motion for

25    summary judgment, and affirming the Commissioner's decision.

26    _____

27    [1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social
      Security, as the defendant in this suit.  See Fed. R. Civ. P. 25(d).
      [2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
28    302(c)(15) (E.D. Cal. 2022).

# I.    JURISDICTION

Plaintiff protectively filed for supplemental security income on May 21, 2020, alleging an onset date of May 21, 2020.  (AR 200-09).  Benefits were denied initially (AR 88-101, 126-30) and upon reconsideration (AR 102-21, 134-38).  Plaintiff appeared for a telephonic hearing before an administrative law judge ("ALJ") on June 10, 2021.  (AR 31-57).  Plaintiff testified at the hearing and was represented by counsel.  (*Id*.).  The ALJ denied benefits (AR 12-30) and the Appeals Council denied review (AR 1-6).  The matter is before the Court under 42 U.S.C. § 1383(c)(3).

# II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 39 years old at the time of the hearing.  (*See* AR 220).  She completed twelfth grade.  (AR 223).  Plaintiff lives with her 12-year-old daughter with special needs, and her daughter's grandparents.  (AR 40, 42-43).  She has no past relevant work history.  (AR 42, 51).  Plaintiff testified that she is not able to take walks, she sits in the car at the grocery store because the walking is "too much," the heaviest thing she can lift is a roll of toilet paper, she has stiffness in her fingers, she needs help washing her hair, and she has difficulty cutting food and holding a fork.  (AR 41, 43-44).  She can watch television for 30 minutes before she has to get up and move around because her legs get stiff, she can sit for 15-20 minutes before she needs to change positions, she has difficulty sleeping, and she has difficulties buttoning shirts and zipping up a zipper.  (AR 45, 49-50).

# III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

2

1   conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

2   equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

3   citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

4   consider the entire record as a whole rather than searching for supporting evidence in isolation.

5   *Id.*

6           In reviewing a denial of benefits, a district court may not substitute its judgment for that of

7   the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

8   to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

9   2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

10  harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

11  nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

12  decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

13  U.S. 396, 409-10 (2009).

14              **IV.     FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

15          A claimant must satisfy two conditions to be considered "disabled" within the meaning of

16  the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

17  activity by reason of any medically determinable physical or mental impairment which can be

18  expected to result in death or which has lasted or can be expected to last for a continuous period

19  of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment

20  must be "of such severity that he is not only unable to do his previous work[,] but cannot,

21  considering his age, education, and work experience, engage in any other kind of substantial

22  gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

23          The Commissioner has established a five-step sequential analysis to determine whether a

24  claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

25  Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

26  claimant is engaged in "substantial gainful activity," the Commissioner must find that the

27  claimant is not disabled.  20 C.F.R. § 416.920(b).

28          If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

3

two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.

4

1   20 C.F.R. § 416.920(g)(1).

2   The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*,

3   180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the

4   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

5   work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*

6   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

7   ## V.   ALJ'S FINDINGS

8   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

9   since May 21, 2020, the application date. (AR 18). At step two, the ALJ found that Plaintiff has

10   the following severe impairments: cardiomyopathy, valvular heart disease, hypertension, myalgia,

11   systemic lupus erythematosus (lupus) and rheumatoid arthritis (RA). (AR 18). At step three, the

12   ALJ found that Plaintiff does not have an impairment or combination of impairments that meets

13   or medically equals the severity of a listed impairment. (AR 18). The ALJ then found that

14   Plaintiff has the RFC to

15   perform sedentary work as defined in 20 CFR 416.967(a) except lift
or carry 10 pounds both occasionally and frequently; stand or walk
16   up to 4 hours of an 8 hour workday; no limitations in sitting;
occasionally climb, balance, stoop, kneel, crouch, or crawl; with
17   bilateral upper extremities, frequent overhead and forward reaching
and handling; avoid concentrated exposure to dust, fumes, and gases;
18   and avoid strenuous activity.

19   (AR 19). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 24). At step

20   five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there

21   are jobs that exist in significant numbers in the national economy that Plaintiff can perform,

22   including assembler, inspector, and sorter. (AR 24-25). On that basis, the ALJ concluded that

23   Plaintiff has not been under a disability, as defined in the Social Security Act, since May 21,

24   2020, the date the application was filed. (AR 25).

25   ## VI.   ISSUES

26   Plaintiff seeks judicial review of the Commissioner's final decision denying her

27   supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1).

28   Plaintiff raises the following issues for this Court's review:

5

1.  Whether the ALJ's RFC determination is not supported by substantial evidence

because he failed in his duty to develop the record and obtain an "updated" opinion; and

2.  Whether the ALJ properly considered Plaintiff's symptom claims.

(Doc. No. 16 at 5-8).

## VII.   DISCUSSION

### A.  Duty to Develop / RFC

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)) (internal quotation marks omitted).  This duty is "triggered when the evidence is ambiguous or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Thomas*, 278 F.3d at 958.  However, the plaintiff bears the burden of presenting evidence in support of her alleged disability. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, without citation to the longitudinal treatment record, Plaintiff argues

> the ALJ did not have the opinion of any examining physician regarding Plaintiff's arthritis.  Rather, the ALJ improperly determined Plaintiff was limited to the extent determined by the [consulting examiner] and state agency medical consultants, none of whom evaluated Plaintiff after she was diagnosed with and suffering symptoms of arthritis.  There were no other opinions contained in the record.  Thus, the ALJ only considered opinion evidence that did not consider the full record or did not actually address Plaintiff's condition.  Instead, the ALJ improperly interpreted the medical evidence of rheumatoid arthritis, joint pain in the hands, wrists, elbows, shoulders, knees, feet, and low back to formulate an unsupported RFC.  The ALJ had a duty to independently develop the record and obtain an updated medical opinion.

(Doc. No. 16 at 6-7) (citation to medical opinions omitted).  In support of this argument, Plaintiff is presumably relying on (1) a May 2021 treatment note recording Plaintiff's reports of joint pain in her hands, wrists, elbows, knees, and low back; and (2) a subsequent May 2021 treatment note indicating a diagnosis of rheumatoid arthritis, vitamin D deficiency, and anemia, as well as "general examination" findings of joint pain in bilateral hands, wrists, elbows, shoulders, knees and feet with stiffness at the telephone consultation.  (Doc. No. 16 at 4 (citing AR 707, 716-17

6

1   (noting Plaintiff denied treatment with methotrexate and preferred "natural method" to control

2   pain and stiffness of joints)).

3          Defendant argues that substantial evidence supported the ALJ's assessment of the opinion

4   evidence and the RFC determination, and the ALJ was not required to further develop the record.

5   (Doc. No. 19 at 5-10).  The Court agrees.

6          The RFC assessment is an administrative finding based on all relevant evidence in the

7   record, not just medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In

8   determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are

9   credible and supported by substantial evidence in the record.  (*Id.*) (RFC determination will be

10  affirmed if supported by substantial evidence).  However, an ALJ's RFC findings need only be

11  consistent with relevant assessed limitations and not identical to them.  *Turner v. Comm'r of Soc.

12  Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).  Ultimately, a claimant's RFC is a matter for the

13  ALJ to determine.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it

14  is the responsibility of the ALJ ... to determine residual functional capacity.").

15         Here, Plaintiff does not specifically argue that the ALJ improperly considered the opinion

16  evidence under the new regulations; nor does she identify any specific functional limitations due

17  to rheumatoid arthritis, based on two treatment visits, that were not properly accounted for in the

18  assessed RFC.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.

19  2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing); *see

20  also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where

21  physician's report did not assign any specific limitations or opinions in relation to an ability to

22  work, "the ALJ did not need to provide [reasons] for rejecting [the] report because the ALJ did

23  not reject any of [the report's] conclusions").  In September 2020, consulting examiner Birgit

24  Sierkerkotte, M.D. opined that "as long as [her] blood pressure is controlled," Plaintiff can

25  stand/walk up to four hours maximum and should avoid strenuous activities due to dyspnea on

26  exertion, status post heart valve repair, with persistent symptoms; has no sitting limitations; needs

27  no ambulatory devices; can lift/carry 10 pounds both occasionally and frequently; can climb,

28  balance, stoop, kneel, crouch, and crawl occasionally; can reach overhead, forward, and handle

7

1  frequently; no limitations on fingering and feeling; and limited working around dust, fumes, and

2  gases.  (AR 544).  The ALJ found this opinion persuasive because it is offered with supportive

3  evidence, it is consistent with the examination findings and with the objective evidence, and she

4  had the opportunity to examine Plaintiff.  (AR 23).  While not challenged by Plaintiff, the Court

5  notes the ALJ's finding that Dr. Sierkerkotte's opinion is persuasive is supported by substantial

6  evidence after proper consideration of the supportability and consistency factors under the new

7  regulations, and the assessed limitations were incorporated into the RFC.[3]  20 C.F.R. §

8  416.920c(c)(1)-(2).

9       Moreover, as noted by Defendant, Plaintiff "fails to specify what 'raw medical data' the

10  ALJ purportedly interpreted.  To the extent Plaintiff contends that it was improper for the ALJ to

11  consider physical examination findings, that evidence is self-explanatory and it is precisely the

12  kind of evidence that an ALJ is task[ed] with evaluating."  (Doc. No. 19 at 9); *see Rounds v.*

13  *Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (ALJ is "responsible for translating

14  and incorporating clinical findings into a succinct RFC."); *Bufkin v. Saul*, 836 Fed. App'x 578,

15  579 (9th Cir. 2021) ("Contrary to [plaintiff's] argument, the ALJ did not rely on her 'lay

16  interpretation' of medical evidence.  Rather, the ALJ simply summarized the medical evidence

17  from [physicians]; she did not interpret any x-rays or test results directly. ALJs need not seek the

18  opinion of a medical expert every time they review new medical evidence and make a RFC

19  determination.").  Here, the ALJ specifically considered both of the treatment notes cited by

20  Plaintiff in the summary of medical evidence, including Plaintiff's referral for positive ANA and

21  positive rheumatoid factor tests; her complaints of bilateral pain in her hands, wrists, elbows,

22  knee and low back, and denial of swelling of the feet and ankles; her reports of joint stiffness in

23

24  [3] The state agency reviewer also opined Plaintiff could stand or walk about 6 hours in an 8-hour workday;
    could frequently climb ramps and stairs but never ladders, ropes, or scaffolds; could frequently balance,
25  stoop, kneel, crawl, and crouch; should avoid concentrated exposure to temperatures, wetness and
    humidity, hazards, fumes, dust, gases, and poor ventilation.  (AR 23, 97).  The ALJ noted the opinion was
26  persuasive although "medical records support more exertional limitations based on cardiomyopathy, status
    post mitral valve and aortic valve replacement, ongoing chest pain, fatigue, uncontrolled hypertension,
27  anticoagulation medication and lupus.  (AR 23-24).  As above, Plaintiff does not argue the ALJ improperly
    considered this decision. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not
28  raised with specificity in Plaintiff's briefing).

the morning, low energy, and fatigue; and diagnoses of Vitamin D deficiency, rheumatoid arthritis, positive ANA and anemia.  (AR 21 (citing AR 707, 716-17).  As discussed in detail below, the ALJ properly discounted Plaintiff's symptom claims, including those related to joint pain and rheumatoid arthritis, because they were inconsistent with the medical record and her daily activities.  (AR 20-23).  For the foregoing reasons, the Court finds no error in the ALJ's assessment of the RFC based on all relevant evidence in the record.  (AR 19-24); *see Bayliss*, 427 F.3d at 1217.

Finally, to the extent Plaintiff contends that the ALJ erred by failing to obtain a consultative examination based on Plaintiff's treatment for "additional conditions not considered by [Dr. Sierkerkotte] and state agency medical consultants," this argument is unavailing.  It is widely held by Ninth Circuit courts that "[t]he mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record."  *Stivers v. Saul*, 2021 WL 1193794, at *8 (E.D. Cal. Mar. 30, 2021) (citing *Charney v. Colvin*, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), *aff'd*, 647 F. App'x 762 (9th Cir. 2016); *see also Rocha v. Comm'r of Soc. Sec.*, 2023 WL 4747689 at *8 (E.D. Cal. July 25, 2023) (("An updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records.").  Here, the ALJ properly relied on a consultative examining and state agency reviewing opinions, as discussed above, and over 400 pages of medical records and treatment notes regarding Plaintiff's claimed impairments, including the treatment notes relating to rheumatoid arthritis cited by Plaintiff.  Thus, the record was sufficient for the ALJ to make a non-disability determination, and the ALJ did not err by failing to order a consultative examination where the record was adequate and unambiguous.  *See LeBeouf v. Saul*, 2020 WL 5702240, at *10-11 (E.D. Cal. Sept. 24, 2020) (ALJ was not required to request a consultative examination in part because the "record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's finding and did not present an ambiguity or inadequacy."); *see also Findley v. Saul*, 2019 WL 4072364, at *6, (E.D. Cal. Aug. 29, 2019) (same).

After viewing the ALJ's reasoning in light of the record as a whole, the undersigned finds

1  the RFC was supported by substantial evidence, and there was no ambiguity or deficiency in the

2  record that would trigger the ALJ's duty to develop the record.

3  **B. Symptom Claims**

4      An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding

5  subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

6  The ALJ first must determine whether there is "objective medical evidence of an underlying

7  impairment which could reasonably be expected to produce the pain or other symptoms alleged."

8  *Id.* (internal quotation marks omitted).  "The claimant is not required to show that his impairment

9  could reasonably be expected to cause the severity of the symptom he has alleged; he need only

10  show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572

11  F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

12      Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

13  ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

14  gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d

15  1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

16  insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

17  undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

18  1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

19  credibility determination with findings sufficiently specific to permit the court to conclude that

20  the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing

21  [evidence] standard is the most demanding required in Social Security cases."  *Garrison v.*

22  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

23  F.3d 920, 924 (9th Cir. 2002)).

24      Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

25  be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning

26  the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

27  the medical evidence and other evidence in the record" for several reasons.  (AR 20).  In her

28  opening brief, Plaintiff generally argues that the ALJ "simply proceeded to summarize the

1    treatment records that detail Plaintiff's reported symptoms, objective findings, and treatment

2    plans" but the "general summary offers no finding or conclusion as to what evidence undermines

3    which portions of Plaintiff's alleged limitations." (Doc. No. 16 at 8 (citing *Lambert v. Saul*, 980

4    F.3d 1266, 1278 (9th Cir. 2020) ("providing a summary of medical evidence in support of a

5    [RFC] finding is not the same as providing clear and convincing reasons for finding the

6    claimant's testimony not credible")). Defendant argues the ALJ "reasonably found Plaintiff's

7    allegations of debilitating symptoms were inconsistent with the overall record." (Doc. No. 19 at

8    10-16). At the outset, the Court notes that it may decline to consider this issue as Plaintiff fails to

9    identify or challenge the ALJ's specific reasons for discounting Plaintiff's symptom claims in her

10   opening brief. (*See* AR 23); *See Carmickle*, 533 F.3d at 1161 n.2 (9th Cir. 2008) (court may

11   decline to address issue not raised with specificity in Plaintiff's briefing); *see also Kim v. Kang*,

12   154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically

13   and distinctly argued" in the party's opening brief). Despite Plaintiff's waiver, the Court will

14   briefly review the reasons given by the ALJ to discount Plaintiff's symptom claims.

15        First, the ALJ specifically found that Plaintiff's allegations "are not consistent with the

16   medical record as a whole." Medical evidence is a relevant factor in determining the severity of a

17   claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)

18   (an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the

19   degree of pain is not supported by objective medical evidence). In support of this finding, the

20   ALJ set out evidence from the medical record including Plaintiff's denial of changes in her

21   vision, headaches, loss of balance, confusion, unilateral weakness or numbness, chest pain or

22   palpitations; and physical examination findings of no acute distress, normal gait, and orientation

23   in all 4 areas. (AR 23). Moreover, regarding Plaintiff's complaints of back pain, the ALJ

24   specifically noted objective testing of the lumbar spine revealed no fracture, osteopenia, or

25   significant degenerative disc disease; and similarly, "she complained of right knee pain, but the x-

26   ray was unremarkable." (AR 23 (citing AR 482-83, 494, 497)). The lack of corroboration of

27   Plaintiff's claimed limitations by the medical evidence was a clear, convincing, and unchallenged

28   reason to discount Plaintiff's symptom claims.

Second, the ALJ specifically found that "[d]espite her complaints, the claimant reported fairly robust activities."  (AR 22).  A claimant need not be utterly incapacitated in order to be eligible for benefits.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability.").  Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a).  In support of this finding, the ALJ cited evidence of Plaintiff's ability to take care of her personal needs; sweep, mop, do laundry, wash dishes, vacuum with breaks, and shop with assistance; prepare meals; drive; and care for her special needs daughter.  (AR 22-23, 541).  As noted above, Plaintiff did not challenge this reasoning with specificity in her opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2.  In her reply, Plaintiff generally asserts that Defendant offers an improper "post hoc rationalization" "by accounting for activities in a way that the ALJ did not when addressing Plaintiff's subjective complaints."  (Doc. No. 20 at 5).  However, the ALJ does more than summarize Plaintiff's activities; rather, the ALJ specifically noted that Plaintiff's "robust" activities, including caring for her child, were inconsistent with her subjective complaints.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (plaintiff's ability to care for young children without help may undermine claims of totally disabling pain); *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Defendant further argues the ALJ asserted two additional reasons for discounting Plaintiff's claims: (1) the "ALJ found that the objective stability of Plaintiff's impairments and routine treatment, were not consistent with allegations of daily severe symptoms and work-preclusive limitations"; and (2) the "ALJ noted that there were multiple instances where

1   Plaintiff's treating cardiac specialist discussed diet, exercise, cholesterol reduction and

2   medication compliance and lifestyle considerations an indication of possible gaps in treatment

3   compliance." (Doc. No. 19 at 13-14).

4         As to the first argument, it is unclear in this case that treatment history, including

5   notations of improvement with treatment, was offered as a specific reason to discount Plaintiff's

6   symptom claims. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009)

7   (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by

8   the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been

9   thinking."). As to the second argument, while unexplained failure to comply with treatment may

10  be the basis for rejection of Plaintiff's symptom claims, the records cited by the ALJ only indicate

11  that the treating provider "discussed" medication, appointment, and lifestyle compliance, along

12  with diet, exercise, weight management, cholesterol reduction, current diagnoses, testing,

13  medications, follow up, and seeking further care if symptoms increase. (AR 23, 661, 666, 670,

14  689); *See Orn*, 495 F.3d at 638. Thus, despite Plaintiff's failure to raise this issue, to the extent it

15  was offered as a reason to reject her symptom claims the Court notes that substantial evidence

16  likely does not support the ALJ's inference that these "discussions" are an "indication of possible

17  gaps in treatment" without more evidence in the record to support such a finding. Regardless,

18  any error is harmless because, as discussed above, the ALJ's ultimate rejection of Plaintiff's

19  symptom claims is supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

20        The Court concludes that the ALJ provided clear, convincing, and largely unchallenged

21  reasons for discounting Plaintiff's symptom claims.

## VIII.   CONCLUSION

23        A reviewing court should not substitute its assessment of the evidence for the ALJ's.

24  *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment

25  as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail

26  above, the ALJ properly considered Plaintiff's symptom claims, properly assessed the RFC, and

27  had no duty to further develop the record in this case. After review, the Court finds the ALJ's

28  decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **RECOMMENDED**:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 16) be DENIED.

2.      Defendant's Cross Motion for Summary Judgment (Doc. No. 19) be GRANTED.

3.      The district court AFFIRM the decision of the Commissioner of Social Security for the reasons set forth above.

4.      The district court direct the Clerk to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

### NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations."  The assigned District Judge will review these Findings and Recommendations under 28 U.S.C. § 636(b)(1)(C).  A party's failure to file objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).


Dated:    May 2, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

14